IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN N. NEGRON-OLIVERAS
CARMEN I. MUSSENDEN-ARCE
DAMARIS MUSSENDEN-MIRANDA
JUAN L. MUSSENDEN-NEGRON
OMAR J. MUSSENDEN-NEGRON
and IVELISSE MUSSENDEN-MIRANDA

Plaintiffs

vs                                                          CIVIL 07-2110CCC

HOSPITAL HIMA SAN PABLO-BAYAMON
DR. VICTOR RIVERA-CRUZ, his wife
JANE ROE and the conjugal partnership
between them;
DR. WILLIAM J. VELASCO-PEREZ, his
wife LUCY DOE and the conjugal
partnership between them;
DRA. ZAHIRA I.NAJUL, her husband
ROBERT DOE and the conjugal
partnership between them;
ADMINISTRATION ER, INC.
DR. VINICIO A. ALMONTE-DURAN, his
wife CHELSEA ROE and the conjugal
partnership between them;
DR. JOHN POPE
A, B, C, D, E, F, G, H and I INSURANCE
COMPANY

Defendants

## OPINION AND ORDER

The action before us is filed pursuant to the Emergency Medical Treatment and
Active Labor Act (EMTALA), 42 U.S.C. §1395dd et. al., with supplemental claims for medical
malpractice damages under Articles 1802 and1803 of the Civil Code of Puerto Rico, 31
L.P.R.A. §§3151and 3152, respectively.  Before the Court is defendant Hospital HIMA-San
Pablo-Bayamón's (Hospital) Motion to Dismiss[1] the EMTALA claim filed April 25, 2008

---

[1] Dr. William J. Velasco's motion to join this dismissal motion (**docket entry 39**),
which is incorrectly titled "Motion Joining Opposition to Motion to Dismiss," is NOTED.

CIVIL 07-2110CCC                              2

(**docket entry 22**), which plaintiffs opposed (**docket entry 32**).  The Hospital replied[2]
(**docket entry 36**).  Although both movant and the plaintiff have submitted extraneous
materials, the parties have not complied with the requirements of Fed.R.Cv.P. 56 for
summary judgment motions.  Therefore, it has not been considered.[3]  The Court shall
therefore determine what the complaint states, or fails to state, as to the EMTALA claim.

The relevant factual allegations of the EMTALA claim taken as true under Rule
12(b)(6) are the following:

> 3.1 On November 25, 2006 around 12:29 p.m. Mr. Juan
> Mussenden (herein after referred to as the patient) of 61 years
> old with a previous history of hypertrophic cardiomyopathy and
> hypertension went to the Emergency Room of the Hospital HIMA-
> San Pablo-Bayamón (herein after referred to HIMA) complaining
> of vomits, dizziness, chest pain, headache, nausea, vertigo,
> generalized pain and difficulty [walking].

> 3.2 The account number [given] to the patient that November 25,
> 2006 at HIMA's Emergency Room was [ ] 41089. The patient was
> admitted for observation as to chest pain, with an order for an
> EKG to be repeat[ed] with laboratories in 6 hours. The patient
> was given [intravenously] Reglan 10mg and Pepcid 20 mg

> 3.3 That on November 25, 2006, at 10:00p.m., the co defendant,
> Dr. Victor Rivera Cruz, ordered the discharge of the patient
> without having the official reading of the head CT Scan and the
> complete results of the laboratories. When Dr. Rivera Cruz
> ordered the patient's discharge he also included prescription[s]
> for Antivert 25 mg., and Zyrtec-D. Dr. Rivera Cruz told the
> patient's wife that the results of the tests and laboratories were
> "ok."  He concluded that the patient had sinusitis.

---

[2] The Hospital's Request for Leave to File Reply to Plaintiff's Opposition (**docket entry 34**) is GRANTED retroactively. The defendant is admonished that, in the future, the reply must be attached to the request for leave and may not be filed independently without leave of court.

[3] In any event, the materials submitted merely correspond to the events narrated in the complaint.

CIVIL 07-2110CCC                              3

>3.4 The patient was sent home on November 26, 2006 at 6:45 a.m. The patient left the ER in a wheel chair and was still suffering from nausea and bungling (sic) vision.

>3.5 Around 9:30 a.m., of that same day, November 26, 2006, the patient's wife received a telephone call from HIMA's employee, Mrs. Soto, asking her to bring back her husband to the HIMA's ER because the co defendant Dr. William J. Velasco-Pérez, read the CT Scan and it was necessary to admit him into the Hospital.

Mussenden was returned to the hospital for admission, not for screening. Shortly after he arrived, while his admission was being processed, Dr. Velasco informed his wife that her husband had suffered a brain infarct (¶3.7). That is, the emergency medical condition had already been diagnosed. We therefore omit a discussion of the events that occurred after Mussenden's return and admission to the Hospital and prior to his death, as those events are outside the realm of EMTALA. Additionally, EMTALA's stabilization requirement is not applicable in situations where an emergency medical condition is determined to exist and the individual is then admitted to the hospital for further treatment. Benítez-Rodríguez v. Hospital Pavía Hato Rey, Inc., 588 F.Supp.2d. 210, 215 (D. Puerto Rico 2008).

It is the Hospital's contention in its Motion to Dismiss that there is no viable claim under EMTALA.

## I. Motion to Dismiss Standard

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded  factual averments and indulge all reasonable inferences in the plaintiff's favor." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." Id. To put it simple, the Court must look leniently at the allegations in the plaintiff's complaint and determine if those allegations "can reasonably admit a claim." Id. Plaintiff must set forth in the complaint "factual allegations, either indirect

CIVIL 07-2110CCC                                    4

or inferential, regarding each material element, necessary to sustain recovery under some actionable theory." <u>Gooley v. Mobil Oil Corp</u>., 851 F.2d 513, 514 (1st Cir. 1988). The facts alleged in such a complaint must still be sufficient to state a claim. <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 10 (1980); <u>Barr v. Abrama</u>, 810 F.2d 358, 363 (2nd Cir. 1987).

## II. Analysis

EMTALA requires participating hospitals to provide to anyone who "comes to an emergency department" and requests examination or treatment "an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department," to determine whether or not an emergency medical condition exists." 42 U.S.C. §1395dd(a). <u>Estate of Felix Giomard Rivera v. Doctor Susoni Hospital, Inc.</u>, 288 F. Supp. 2d 161,163-63 (D. Puerto Rico 2003). The First Circuit noted that EMTALA requires an appropriate medical screening. <u>Correa v. Hosp. San Francisco</u>, 69 F.3d. 1184, 1192 (1st Cir. 1995). After discussing the difficulty of attempting to define the phrase, the Court concluded:

> Be that as it may, the courts have achieved a consensus on a method of assessing the appropriateness of a medical examination in the EMTALA context. A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints.

<u>Id</u>.

The plaintiffs' own allegations demonstrate that Mussenden was brought to the Hospital's ER, screened, and, as part of that screening, a head CT scan and laboratory tests were done. On the night of November 25, 2006, before discharging the patient, Dr. Víctor

CIVIL 07-2110CCC                          5

Rivera Cruz[4] told his wife that the results of the tests were "ok" and diagnosed the condition as sinusitis.  He prescribed medications and discharged the decedent (Complaint, ¶3.3).

Dr. Rivera Cruz, according to the allegations, is the only doctor at the hospital's ER identified as having intervened in the screening of the patient after his arrival on November 25, 2006 and until he discharged Mussenden on November 26 2006 at 6:45 a.m.  The allegations relevant to the EMTALA claim are based on a misdiagnosis by Dr. Rivera Cruz–sinusitis instead of a brain infarct–at the time of discharging the patient when he didn't have the official reading of the head CT Scan or the complete results of the laboratories.

As numerous courts have noted, EMTALA is a limited "anti-dumping" statute, not a federal malpractice statute.  Reynolds v. Mainegeneral Health, 218 F.3d. 78, 83 (1st Cir. 2000).  "So far as we can tell, every court that has considered EMTALA has disclaimed any notion that it creates a general federal cause of action for medical malpractice in emergency rooms."  Id., citing Summers v. Baptist Med Ctr. Arkadelphia, 91 F.3d. 1132, 1137 (8th Cir. 1996).  EMTALA does not require a hospital to provide a uniform or minimal level of care and does not provide a cause of action for misdiagnosis or improper medical treatment.  López Morales v. Hospital Hermanos Melendez, 245 F. Supp. 2d 374,378 (D. Puerto Rico 2003).  These areas are traditionally left to state malpractice laws. Id.

> Congress enacted EMTALA in 1996, in the face of "the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance." EMTALA created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available. Although the exact scope of the rights guaranteed to patients by EMTALA is not fully defined, it is clear that at a minimum Congress manifested an intent that all patients be treated fairly when they arrive in the emergency

---

[4]As described in the Complaint, at ¶2.1.7.2, at page 3:

Dr. Víctor Rivera Cruz, is of legal age, medical doctor, married with Jane Roe under a conjugal partnership, and that during the 25th and 26th of November 2006, rendered medical treatment to Mr. Juan Mussenden at the Emergency Room of the Hospital HIMA–San Pablo.

CIVIL 07-2110CCC                                6

> department of a participating hospital and that all patients who
> need some treatment will get a first response at minimum and will
> not simply be turned away.

Reynolds, supra, at 83 (Citation omitted).

As further explained by this Court in Torres Otero v. Hospital General Menonita, 115

F. Supp. 2d 253, 260 (D. Puerto Rico 2000):

> . . . EMTALA seeks to fill in the gaps left by traditional state tort
> law: a mere failure to provide medical treatment consistent with
> generally accepted medical standards is actionable under state
> tort law, but an improvident transfer or discharge of a patient,
> particularly before treatment is initiated, risks leaving a patient
> without legal recourse.

The Reynolds Court, continued, citing Baber v. Hospital Corp. Of America, 997 F.2d

872, 880 (4th Cir. 1992):

> The avowed purpose of EMTALA was not to guarantee
> that all patients are properly diagnosed, or even to ensure that
> they receive adequate care, but instead to provide an 'adequate
> first response to a medical crisis' for all patients and 'send a clear
> signal to the hospital community . . . that all Americans,
> regardless of wealth or status, should know that a hospital will
> provide what services it can when they are truly in physical
> distress.

In sum, a refusal to follow regular screening procedures in a particular instance

contravenes EMTALA; but faulty screening, in a particular case, as opposed to disparate

screening or refusing to screen at all, does not contravene the statute.  Correa, supra, at

1192-93.  At the center of plaintiffs' claim is the misdiagnosis of the patient's brain infarct as

simply a case of sinusitis, a medical malpractice claim not encompassed by EMTALA.

There being no cause of action under EMTALA, the only remaining claims are those

for medical malpractice under Articles 1802 and 1803 of the Civil Code of Puerto Rico, over

which we decline to exercise jurisdiction.

CIVIL 07-2110CCC                                          7

For the above-stated reasons, the Motion to Dismiss **(docket entry 22)** is GRANTED.   Accordingly, this entire action is DISMISSED.[5]   The state law claims are dismissed without prejudice.

SO ORDERED.

At San Juan, Puerto Rico, on March 11, 2009.


                                                    S/CARMEN CONSUELO CEREZO
                                                     United States District Judge

_____

[5]Five of the six plaintiffs and all of the defendants are domiciled in Puerto Rico. Although plaintiffs have invoked our diversity jurisdiction on the basis of one plaintiff from Texas, there is none, inasmuch as complete diversity is lacking.  See, e.g., Connectu LLC v. Zuckerberg, 522 F.3d. 82, 91 (1st Cir. 2008).